The plaintiff's counsel maintains that the questions of law involved in this case have been conclusively settled in his favor in the courts of this state. In Clarke v. Van Surlay (15Wend., 436), the plaintiff, one of the children of Thomas B. Clarke, brought ejectment for a portion of the Chelsea farm, claiming title under the will of Mary Clarke, against the defendant, who held under a deed executed on the second day of August, 1821, by T.B. Clarke to one George De Grasse. The will of Mrs. Clarke, the several acts of the legislature, and the proceedings in the court of chancery, which were given in evidence in the case now under consideration, are the same which were relied *Page 424 
upon by the defendant in the case referred to; and the only difference favorable to the present defendant, if any exists between the two cases, relates to the consideration upon which the deeds from T.B. Clarke were executed. The deed to De Grasse purported to be for the consideration of $2000, and professed to convey thirty-nine lots, and there was no proof respecting the actual consideration, nor was there anything in the terms of the conveyance to show that De Grasse was a creditor of Clarke. The deed under which the present plaintiff claims recites that Clarke was indebted to the grantee in a large sum of money. The grant is stated to be made in consideration of the premises and of $3750 paid by the grantee to the grantor. Besides, there was proof in this case as to the actual consideration. The conveyance was made in part for cash, secured to be paid to Clarke by the bonds of the purchaser, and which was afterwards actually paid, and in part to pay for board and other necessaries furnished to Clarke's family. There is another discrepancy between the two deeds, which is either immaterial or favorable to the present plaintiff. The one to De Grasse was not approved by a master in chancery until many years after it was given, and after the death of Clarke, while the conveyance to McIntyre, upon which the plaintiff's title in this case depends, was approved by a master, as to "manner and form," at the time it was executed. The supreme court, in Clarke v. Van Surlay, held the deed to De Grasse to be a valid conveyance, sufficient in law to pass the title which Mrs. Clarke, the testatrix, had at the time of her death, and to bar the claims of the children of T.B. Clarke, the devisees in remainder. The case was brought before the court for the correction of errors, on appeal, and is reported in that court, under the name of Cochran v. Van Surlay, in 20 Wend., 365. The judgment of the supreme court was affirmed. Assuming, for the present, that the discrepancies which I have referred to are immaterial, the judgment of the court of errors is a determination *Page 425 
of the court of last resort in this state, not only upon all the questions of law in the case under consideration, but upon the identical title under which the plaintiff in the reported case and the defendant in the present case claimed to own the premises in controversy in the respective suits. Theoretically, the judgments of courts are only evidence, more or less authentic, of the law, and not the law itself; and it is unhappily true that cases sometimes occur where a prior judgment upon the same legal question cannot be conscientiously followed, after the principle has received a further and more deliberate examination. The cases, however, are extremely rare in which the determination of the highest appellate court can be properly departed from, when the same legal question again arises before a court of the same government. If it shall be thought that an erroneous rule has been established by the adjudication relied on as a precedent, it is better that it should be changed by the legislature by an act which cannot retrospect, than that the courts should overturn what they have themselves established, and thus disappoint all who have acted upon the rule which had been considered settled. If this is so where an abstract rule of law, determined in a prior case, is sought to be applied to new facts, the reason is stronger where, as in this case, a series of particular acts has been passed upon and held to produce a given legal result, and the same identical facts are again before the court between other parties. In such a case, there being no pretence of collusion, and no reason to impute carelessness or inattention to the judges, the determination should be considered final and conclusive upon all persons in interest or who may become interested in the question, as well as upon the parties to the particular action. The present case affords forcible illustration of the importance of this doctrine.
Here was a large number of building lots which Clarke, primafacie, was authorized to sell, and a large proportion of which, if not all of them, he actually did sell. The *Page 426 
number, in one of the documents contained in the printed case, rose as high as 189. A question arises relating to the title to one of them. It depends exclusively upon the effect of written documents, acts of the legislature, and the records of the courts. It is earnestly litigated, and is carried through all the courts, and is finally decided in the tribunal of ultimate appeal. Nearly twenty years afterwards the title thus established in respect to one of the lots is again questioned in regard to another of them. It may have been purchased upon the faith of the prior decision, or have been forced upon the party now claiming it by the judgment of a subordinate tribunal, acting in obedience to the rule established by the prior decision. The latter was the case here. If the question is still open to discussion and liable to be determined the other way, the reports of adjudged cases will operate as a snare rather than a safe guide. I am of opinion that we ought not to reëxamine the grounds of the decision in the case of Cochran v. Van Surlay; but to regard it as a settled principle that T.B. Clarke had, under the statutes and orders given in evidence, the right to sell the premises in controversy in this case, and that the purchaser was not bound to see that the proceeds of the sale were applied to the benefit of the devisees in remainder.
There is no difference in principle between the two cases. InCochran v. Van Surlay it was assumed that the sale was for cash paid. The order of July 3, 1815, which was applicable to that sale, authorized Clarke, under the direction of a master in chancery, to apply the proceeds of the sale, or so much thereof as might be necessary, to the payment of Clarke's debts then owing and to be contracted for the necessary purposes of his family. The authority was to sell the lots to raise money to pay debts which Clarke had incurred or might incur for the support of his family; and the sale and conveyance made under that authority was held to be effectual to pass the title. The deed to McIntyre *Page 427 
was executed in part upon the consideration of money paid, and so far was precisely like the one to De Grasse. As to the rest, the conveyance was made in the performance of a bargain whereby the grantee was to furnish board and other necessaries to Clarke and his children, and to have in payment thereof a conveyance of the land. There was no absolute existing debt for which the land was conveyed in satisfaction. The board and other necessaries were advanced by McIntyre as a payment of the consideration for which the land was sold. According to the adjudged case, Clarke could lawfully sell the land to raise money to pay debts incurred for necessaries for his family which he should procure on credit. The sale in controversy in this case was to the party who furnished such necessaries, specifically and in payment therefor. I am unable to perceive any solid distinction between the cases.
In Cochran v. Van Surlay, it was decided that the master's approval of the transaction applied only to sales in satisfaction of existing debts. In that case the only act of a master was the indorsement of his approval of the deed many years after it was executed. This, of course, was of no consequence if the order required the sale to be authorized by the master before it should take place. In the present case, it may well be doubted whether the certificate indorsed upon the deed, importing that it was approved of as to manner and form, was the act contemplated by the order. It seems clear to me that the design was that the master should pass upon the propriety of the sale in reference to all the circumstances bearing upon that question, and that the certificate ought to import the exercise of that judgment. If the question were res nova, I should adopt the construction which would require the concurrence of the master in all cases of a disposition of land under the orders of the chancellor. But a more restricted meaning has been given to the paper, and, for the reasons before mentioned, I think we are not at liberty to review that *Page 428 
decision. The deed to McIntyre was not a conveyance in satisfaction of a debt of Clarke, and the sale, of which it was the evidence, did not, therefore, require the approbation of a master in chancery.
We have been referred, by the defendant's counsel, to the cases decided in the supreme court of the United States upon the title derived under T.B. Clarke, in which the case of Cochran v. VanSurlay has not been followed, and we are asked to adopt the conclusions of that court in opposition to the judgment of the court of errors in this state. (Williamson v. Berry, 8How., 495; The Same v. Irish Presbyterian Congregation,id., 565; The Same v. Ball, id., 56.) It would be enough to say of the first and principal case, that it was shown positively that the deed of Clarke, which was the foundation of the title set up, was given, in part, for a consideration not authorized by the order, to wit, other lands situated in Pennsylvania and Virginia, which had been purchased at sales for taxes; but the more suitable answer is that, as between the judgments of our own courts and those of the general government, where there is a conflict between them, we ought to follow our own decisions, except in cases arising under the constitution and laws of the Union, where the judgments of the supreme court of the United States are of controlling authority. In cases in which the federal courts acquire jurisdiction of controversies, on account of the character or residence of the parties, such courts assume to administer the law of the state in which the matter arose, and, where the action relates to the title to real estate, the law of the state within which the real estate is situated. Thus, the legal rules of property existing in New-York are those prescribed by the laws of New-York, and such laws are the same whether they are administered by the courts of the state or by the courts of the nation. There is no national code or system of laws respecting private property. The dispensing of private justice between individuals is in general a matter of *Page 429 
state concern. It is only in a few exceptional cases that the courts of the United States can be called upon to act. Where the United States, as a political corporation, is the plaintiff, where an alien is a party, and where the action is between the citizen of a state within which the action is brought, and a citizen of another state, concurrent jurisdiction is, from motives of policy and convenience, conferred upon the federal courts. (Judicial Act, § 11; 1 Story's Laws, 57.) In these exceptional cases, of comparatively unfrequent occurrence, the general government undertakes, through its courts, to administer the state laws. As evidence of these laws, it, of course, receives the state constitutions and statutes, and the adjudications of the state courts. If a question is found to have been settled by the highest appellate court of a state, that decision is binding upon the courts of the United States to the same extent as upon the courts of the state in which it was made. We have already shown that the judgment of the court of errors, in Cochran v. Van Surley, established the authority of T.B. Clarke to sell and convey the land in question. If we are right in that, it follows that the supreme court of the United States fell into an error in denying to his conveyance the effect to which it was entitled. Upon such a question as this the highest court of the Union has no legal preëminence over any of the courts of this state. We listen to the views of its judges with the respect to which their eminent character and high position entitle them, but in inquiring what the law of this state upon a particular question is, we must look primarily to the judgments of our own tribunals, and when we find the point well settled by the decision of the highest state court, we cannot do otherwise than follow that decision, notwithstanding the supreme court of the United States has taken a different view of the matter. The able dissenting opinion of Mr. Justice Nelson in Williamson v.Berry contains a reference to the cases in that *Page 430 
court, where the views which we have expressed upon this question have been often affirmed.
Upon the whole case I am of opinion that the judgment of the superior court should be affirmed.
SELDEN, J., dissented.
Judgment affirmed.