Jeremiah Towle. Appellant, *v.* William Remsen, et al., Respondents.

The corporation of the city of New York having, prior to 1807, the title in fee to lands between high and low water mark, known as the "tide way," did not, by accepting title to lands under water, granted to it by the State by the act of 1807 (chap. 115, Laws of 1807), with a proviso giving the pre-emptive right to the owners of adjacent lands in all grants made by the corporation of the lands under water, consent to qualify its title to the "tide way," so that it could thereafter only grant land therein to the persons to whom it could grant the adjoining lands under water. In the absence of a condition in the act, that the city should not dispose of that which it then owned in fee simple, to whom and upon such terms as it might think proper, no such condition can be implied.

In 1837 said city granted to certain persons certain water lots; the grant contained a reservation of annual rent, with a covenant on the part of the grantees to pay, and a condition of re-entry for non-payment thereof, with various covenants as to improvements; also a condition, that if at any time thereafter it should appear that the grantees, at the date of the conveyance, were not seized of an estate in fee simple of the adjoining lands above high water mark, or should make default in the performance of their covenants, "then and in every such case," that the grant should be void, and the grantees might "forthwith there-uponenter into and * * * be seized of the said premises." *Held,* (Earl, J., dissenting,) that the condition last mentioned was not a condition of limitation or a condition precedent, but was a condition subsequent; that the grant conveyed a present estate in fee simple, although the grantees had in fact at the time no title to the uplands; said estate subject to be, and which could only be defeated by a subsequent event, *i. e.,* a re-entry, because of discovery of a defect in title, or default in the performance of any of the covenants; that the condition could only be taken advantage of by the grantor, and the right of re-entry for breach thereof was not assignable, and did not pass by a subsequent conveyance of the land by the city, in hostility to and after attempted repudiation of the original grant; and that therefore an action to enforce the right of re-entry could only be brought in the name of the city.

Also *held,* that a stipulation in the grant, that it was not to be taken as a covenant of warranty, or to operate further than to pass the estate of the grantor, did not show an intent that said condition should be precedent.

Also *held,* that if the condition should be interpreted as precedent, and if the grantees of the city took no title under the grant, then, at least as to a stranger to the grant, although an owner of the adjoining uplands,

the statute of limitations began to run at the time of the execution of the grant; that the possession of the grantees was adverse, and, continued by them and their successors in interest for twenty years, barred a re-entry; and that the statute was a defense to an action of ejectment brought by such owner claiming title to the land under water, by virtue of a subsequent grant from the city.

Also *held,* that a deed of the water lots, from one claiming under such subsequent grant from the city, executed during such adverse possession, was void under the statute (1 R. S., 734, § 147), declaring void grants of lands which are at the time in the possession of a person claiming under adverse title.

(Argued April 9, 1877; decided September 18, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the City of New York, affirming a judgment in favor of defendants entered upon a verdict.

This was an action of ejectment to recover possession of certain "water lots" in the city of New York, on the west side, said lots being partly what is known as the "tide-way," *i. e.* land lying between high and low water marks, and partly land below low water mark.

Both parties claim under grants from the city. In 1837, the city of New York granted to the heirs and devisees of Mary Clarke, who claimed title under her will to the adjoining upland, the lots in question with others. The grant reserved certain specified rents, payable annually forever, which rents the grantees covenanted and agreed to pay. They also covenanted, when requested, to build certain wharves or streets, and to keep them in repair, the city to have the wharfage therefrom. The grant also contained the following covenants and conditions:

"And it is hereby further covenanted and agreed by and between the said parties to these presents, and the true intent and meaning thereof is hereby declared to be, that this present grant, or any words, matter or thing in the same contained shall not be deemed, construed or taken to be a covenant or covenants of warranty or seizin of the said parties of the first part, or their successors, nor to operate further than to pass the estate, right, title or interest they have

or may lawfully claim by virtue of their several charters and various acts of the legislature of the people of the state of New York; and it·is further expressly understood and agreed, and these presents and the estate hereby granted are upon this express condition, that if, at any time hereafter, it shall appear that the said parties of the second part were not, at the time of the date of these presents, seized of a good, sure, absolute and indefeasible estate of inheritance in fee simple of, in and to the lands and premises on the easterly side of the line of high water, and adjoining to the water lot and ground under water hereby conveyed, or so intended to be; or if the said parties of the scond part, their heirs, executors, administrators or assigns shall make default in the performance of any or either of the covenants above contained on their part and behalf to be observed, performed, fulfilled and kept; then, and in every such case, these presents, and every article, clause and thing herein contained, shall be absolutely null and void, and the said parties of the first part and their successors shall, and may forthwith thereupon enter into and act upon the said premises hereby granted, and shall thereafter be seized of the said premises, with the appurtenances, free, clear and discharged of and from any claim, right or pretence of claim or right, of the said parties of the second part, their heirs or assigns, anything herein contained to the contrary notwithstanding."

The grantees did not in fact own the upland, and after a long litigation the plaintiff established his title thereto. Thereupon the commissioners of the sinking fund adopted resolutions, by their terms cancelling so much of said grant as covered the lots in question, and granting plaintiff's application for a conveyance of the same upon payment of the back rent, and in November, 1859, a grant was executed by the city to plaintiff.

The upland lots were bid off by plaintiff in 1844, upon a foreclosure sale ; at his request the Master's deed was executed to one Suydam, who in May, 1847, conveyed to one Broadhead, who in 1848 conveyed to plaintiff.

The devisees of Mrs. Clarke, the grantees in the first conveyance, immediately after they received the grant began filling in, they constructed bulkheads and streets, and in 1844 conveyed to defendant Remsen, who with his tenants have been in possession since.

This action was commenced in 1860.     Further facts appear in the opinion.

*Charles M. DaCosta,* for the appellant. The terms and conditions of the grant to the appellant's predecessors and grantors were conditions precedent. (*Tompkins* v. *Elliott,* 5 Wend., 497; *Martin* v. *Ballou,* 13 Barb., 133; *Underhill* v. *S. & W. R. R. Co.,* 20 id., 456; *Parmelee* v. *O. & S. R. R. Co.,* 3 Seld., 414; *Finlay* v. *King,* 3 Pet., 374; 4 Kent's Com., 125 M. P.; id., 129; *Barrow* v. *Madan,* 2 J. R., 148; *Jones* v. *Barkley,* 2 Doug., 691; *Doe* v. *Scudamore,* 2 B. & P., 295; *Towle* v. *Palmer,* 1 Robt., 468; *Nott* v. *Belmont,* 2 Bosw., 62, 63; *R. R. Co.* v. *Schurmier,* 7 Wal., 272, 289.) If these conditions are not conditions precedent they constitute conditional limitations. (1 Black. Com., 155 m. p.; 1 Washb. on R. E., 457, § 27; 1 Bac. Abr., Tit. Condition H., 403.) A patent for lands issued without authority, or prohibited by statute may be attacked collaterally whenever title is claimed thereunder. (4 Abb. N. Y. Dig., 750 [note]; *Terry* v. *Megerle,* 24 Cal., 609; *Le Blanc* v. *Ludrique,* 14 La. An., 772; *Gonzalus* v. *Hoover,* 6 S. & R., 118; *Ross* v. *Barland,* 1 Pit., 655; *Stoddard* v. *Chambers,* 2 How., 284; *Brown* v. *Clements,* 3 id., 650; *Kissell* v. *St. L. Pub. Schools,* 18 id., 19, 27; *Garland* v. *Winn,* 20 id., 8; *Gregg* v. *Tesson,* 1 Black., 150; *Lindsey* v. *Hawes,* 2 id., 554; *State of Minn.* v. *Bachelder,* 1 Wal., 109, 115; *Rector* v. *Ashley,* 6 id., 142; *Patterson* v. *Winn,* 11 Wheat., 380.) The grant by the city was not a conveyance. (2 Washb. on R. P., 6; *Van Rensselaer* v. *Hays,* 19 N. Y., 68; *Jackson* v. *Aldrich,* 13 J. R., 109; *Parmelee* v. *O. & S. R. R. Co.,* 2 Seld., 81; *Rising* v. *Stannard,* 17 Mass., 282, 286; *Ellis* v. *Paige,* 1 Pick., 47.) The defense of the statute of limitations could not pre-

vail. (*Jackson* v. *Hill*, 5 Wend., 532; *Livingston* v. *Peru Iron Co.*, 9 id., 511; *Butler* v. *Phelps*, 17 id., 642; *Hoyt* v. *Dillon*, 19 Barb., 644; *Towle* v. *Dolan*, 1 Robt., 473; *Burhams* v. *Van Zandt*, 7 N. Y., 523; *Bedell* v. *Shaw*, 59 id., 46; *Sands* v. *Hughes*, 53 id., 287, 293; *Towle* v. *Smith*, 2 Robt., 489; Code, §§ 78, 81.) The act against champerty could not be invoked. (*Tuttle* v. *Jackson*, 6 Wend., 213, 224; *Truax* v. *Thorne*, 2 Barb., 156, 158; *Hoyt* v. *Thompson*, 1 Seld., 320, 345, 347.)

*David Dudley Field*, for the respondents. Plaintiff failed to show that he owned the two lots when the water grant to the devisees of Clarke was made. (*Sinclair* v. *Jackson*, 8 Cow., 543; *Cochran* v. *Vansurlay*, 20 Wend., 365; *Williamson* v. *Field*, 2 Sandf. Ch., 533; *Williamson* v. *Berry*, 8 How. [U. S.]; *Williamson* v. *Suydam*, 24 id.; *Towle* v. *Forney*, 14 N. Y., 423; *Clarke* v. *Davenport*, 1 Bosw., 95.) The action was barred by the statute of limitations. (*Sands* v. *Hughes*, 53 N. Y. 287; *Bedell* v. *Shaw*, 59 id., 46; *Tyler* v. *Heidom*, 46 Barb., 434.) The water grant under which plaintiff claimed was void for champerty. (*Sands* v. *Hughes*, 53 N. Y., 292.)

Miller, J. The controversy in regard to the title to the upland connected with the water lots, which are the subject of litigation in this case, has been so frequently before the courts of this State for adjudication that it is too late at this day to reconsider and review the grounds upon which these decisions are based. The doubts which may have existed heretofore in reference to the appellant's rights in this respect, must of necessity yield to the numerous decisions of the courts, and the questions involved, and which have thus been solemnly disposed of, must be considered as *res adjudicata.* (See *Cochran* v. *Van Surlay*, 20 Wend., 365; *Towle* v. *Forney*, 14 N. Y., 423; *Williamson* v. *Moore*, decided April, 1862, and unreported; *Clarke* v. *Davenport*, 1 Bosw., 96, affirmed in this court; *Suydam* v. *Williamson*, 24 How. [U. S.], 427.)

The time has passed for a re-examination of these questions, and whatever views may have been entertained originally, must yield to the principle of stare decisis, which constitutes one of the strongest safeguards for the protection of property and the enforcement of legal rights. We are not, therefore, called upon to re-examine or to reconsider the soundness of these decisions, and we are bound to follow them as settled law, applicable to the case to be determined, and as entirely controlling and decisive.

We pass then to a consideration of the question arising under the grant of the city of New York to the heirs of Mary Clarke in 1827, under whom the defendants claim title. The land under water originally belonged to the Crown of Great Britain, and passed by the Revolution to the State of New York. The portion between high and low water mark, known as the *tide-way*, was granted to the city by the early charters (Dougan charter, §§ 3 and 14; Montgomerie charter, § 37), and the corporation have an absolute fee in the same. (*Nott* v. *Thayer*, 2 Bosw., 61.) It necessarily follows that the city had a perfect right, when it granted to the devisees of Clarke, to make the grant of their portion of the land in fee simple absolute. As to the land outside of the *tide-way*, the city took title under chapter 115 of the laws of 1807, with a proviso giving the pre-emptive right to the owners of the adjacent land in all grants made by the corporation of lands under water granted by said act. The claim of the appellant's counsel, that the city by accepting the grant made to it under the act of 1807, with the proviso thereto annexed, consented to qualify its absolute title to the tide-way, and thereafter could grant land in such tide-way only to such persons to whom it could grant the land lying on the west of the tide-way, is not, we think, well supported. No such condition is made by the act referred to, and it would be going very far to hold that such a condition could become a part of the grant, without an express provision to that effect. The Legislature left it to the city to dispose of the interests mentioned upon the pro-

viso referred to; but it enacted no condition that it should not dispose of that which it owned in fee simple upon such terms as it deemed proper, and in the absence of any such enactment, such a condition cannot be implied.

The grant to the Clarke heirs, among other things, contained a condition, upon the construction of which the decision of this case very much depends, to which we shall hereafter have occasion to refer, and the question to be determined is, as to the effect of the condition in the grant in question. If it be a condition precedent the grant was void at the beginning. If a condition subsequent, it could only be taken advantage of afterwards by entry in accordance with law. It therefore becomes an important subject of inquiry whether the condition referred to was a condition precedent, or a condition subsequent.

Precedent conditions are such as must happen or be performed before the estate can vest or be enlarged ; subsequent are such as by the failure or non-performance of which an estate, already vested,, may be defeated. (2 Black. Com., 154; 4 Kent, 125.)

Where there is a condition precedent, the land is conveyed upon condition that the grantee do, or abstain from doing something, or that something has happened or failed to happen, before the vesting of the estate. (1 Shep. Touch., 121, *et seq.*) In case of a condition subsequent, the estate becomes divested and ceases, and a right of re-entry arises upon the happening of the event provided for in the condition. Having in view these general rules, the question arises whether the estate granted by the grant, under which the defendant claims title, became vested at the time of the grant, or the vesting of the same in the grantees was deferred until the event constituting the condition occurred and was divested by the happening of such event. The grant under which the defendant claimed, conveyed in fee simple the land under water therein described, of which the land in controversy formed a portion. The grantees therein agreed to pay certain quit-rents annually, and to make and keep in repair

certain streets, and the deed contained a covenant by the grantors to permit the grantees to collect wharfage. Then followed the clause containing the condition now to be interpreted, which provided that "if at any time hereafter it shall appear" that the grantees at the date of the conveyance were not seized of an estate in fee simple of the premises on the easterly side of high water, and adjoining to the water lot conveyed, or should make default in the performance of their covenants, that "then and in every such case" the grant should be void, and the grantors might "forthwith thereupon be seized" of the same.

The grant most manifestly conveyed a present estate in fee simple which was liable to be defeated by a subsequent event, but which until that event occurred was vested in the grantees. The grantors evidently intended to pass, and did actually convey a title which was effective, until something transpired to disturb it. Until then, and not before, the grantees were to be seized. The grantees took possession, made improvements, and paid or were liable to pay rent, and when it appeared *thereafter* that the title failed, or when any default was made in the performance of any or either of the covenants contained in the grant, *then*, and not before, the grant became void, and the right to re-enter was in force. It cannot be seriously contended that the non-performance of either of the conditions *in relation to* the covenants would be a breach of a condition precedent.

The same thing was to be done at a future period of time in relation to each of these covenants before any right to re-enter existed, and it is very clear that this was to be subsequent to the period when the grantees were first seized. The condition as to the failure of title is connected with and constitutes a material portion of the covenants referred to, and all of these are controlled by the language employed previously, which clearly has in view a future occurrence; a time thereafter when it appeared that the grantees were not seized, or that they made default. It was *then*, and not before, that the condition was broken, and the grantees had

a right to enter and became thereafter seized as provided for. The condition which relates to a failure of title and the forfeiture are coupled together, and precede the words "then and in every such case," and the phraseology employed evidently relates back to all which precedes it.

No precise technical words are required to constitute a condition precedent or subsequent, and the construction, if such a condition must always be founded upon the intention of the parties. (3 Cruise Digest, 448, title 32, chap. 24, § 7; id., tit. 13, chap. 1, § 10; *Blacksmith* v. *Fellows*, 3 Seld., 401; *Underhill* v. *Sar. & Wash. R. R. Co.*, 20 Barb., 455; *Spaulding* v. *Hallenbeck*, 39 id., 79, 87.) Even when the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if the act may as well be done afterwards as before the vesting of the estate, the condition is subsequent. (*Martin* v. *Ballou*, 13 Barb., 133.) The intent of the parties in the grant is quite apparent. Large expenses were to be incurred by the grantees for the building and improvement of the streets therein named. Large spaces between these streets were to be filled up at a heavy outlay, and rents were to be paid annually. The improvements mentioned were also essential in order that the benefits to be derived from the grant might be realized. It is not reasonable to suppose that all these things were to be done without a particle of title or right being vested in the grantees. When they received the grant they had a right to assume, and it was clearly intended, that they should be seized of an estate. While they incurred the hazard of its being defeated by a re-entry under the covenant, they had strong ground to assume that no such entry would be established without some legal proceeding by the grantor. The stipulation that the grant was not to be taken as a covenant of warranty, nor to operate further than to pass the estate of the grantors, does not show that the intention of the parties was that the conditions should be precedent, but would seem to have been inserted by way of extreme caution, and so avoid liability for a failure of title. It could not affect

the claim of a riparian owner or a grantee, and evidently was solely for the protection of the grantor.

It is insisted that, if the conditions referred to are not conditions precedent, they constitute conditional limitations. We think that this position is not maintainable, and that the conditions in this grant are not brought within the definition of this term. The estate is not confined or limited to any particular contingency, but is absolute, unless there is a failure of title in the grantees to the upland, in which event a right of re-entry is given. To constitute a conditional limitation, the limitation must be over to a third person, which is not this case (4 Kent Com., 126, 127), or when, as in the case stated in 2 Black. Com., 155, land is granted to a man so long as he is parson of Dale, or while he continues unmarried, or until, out of the rents and profits, he shall make five hundred pounds, and the like. The condition in question does not come within any such rule, and cannot, under any aspect in which it can be considered, be regarded as a conditional limitation. (See 1 Brown & Hadley's Com., [Wait's Ed.], 603.)

If the condition was a condition subsequent then it can only be taken advantage of by a re-entry by the grantors. And upon its determination the interest of the grantor and his representatives becomes a mere possibility of a reversion, incapable of being assigned. (*Nicoll* v. *N. Y & E. R. R. Co.*, 12 N. Y., 121.) A right of re-entry for a breach of a condition subsequent does not pass by a conveyance of the land, and until there is a re-entry by the grantor or his heirs, or the successors of the grantor for a breach of the condition. The estate is not forfeited, but remains unimpaired in the grantee. A mere stranger cannot take advantage of it. (Ibid.; *Schulenberg* v. *Harriman*, 21 Wall., 63; *Fonda* v. *Sage*, 46 Barb., 109; *Underhill* v. *S. & W. R. R. Co.*, 20 Barb., 455; 4 Kent, 127; *Hoyt* v. *Dillon*, 19 Barb,, 644–651.)

In the last case cited it is laid down by BROWN, J., that a right of entry was not assignable, because as was said, "under

color thereof pretended titles might be granted to great .men, where by right might be trodden down and the weak oppressed," and here was the origin of the rule embodied in our written law. (1 R. S., 739, § 147.)

In Greenleaf's Cruise on Real Property (Vol. 1, tit. 13, chap. 1, § 15), the reason of the rule of the common law that the estate is not defeated, although the condition be broken until entry by the grantor or his heirs, is stated to be, that it is a maxim of law that "nothing which lies in action, entry, or re-entry, can be granted over in order to discourage maintenance." There is no interest to assign before the breach, and after that the right of entry, as we have seen, is not capable of being transferred. There is no expression in the language of the re-entry clause, which excepts this provision from the general rules which apply to similar cases, and the use of the words " enter into and act upon said premises," evidently mean an entry by action according to law. There must first be a lawful entry, and afterwards such action in regard to the premises as the grantors would be authorized to take. The entry is the main purpose, and had it been intended that a resolution of the constituted authorities of the city of New York, or any other proceeding on their part should be substituted for an actual entry according to law, a failure to make such pro- vision is a complete answer to the position that no entry was required. The language employed does not reserve any authority in the commissioners of the sinking fund, which sanctions a revocation of the grant otherwise than by a re-en- try, as the condition expressly provides, and as the law requires, even if such a power could be conferred under any circumstances.

When the grantees took title it is fair to assume that they would never have subjected themselves to the expense and burden imposed except upon a settled conviction that they became seized of an existing title from the grantors.

It follows that the action to enforce the right of re-entry should have been brought by and in the name of the city of

New York, and the plaintiff occupying the position of a mere assignee of the right of re-entry is not in a situation to maintain or assert any such right, or any claim in this action. (See *Schulenberg* v. *Harriman*, *supra*.)

The acts of the commissioners of the sinking fund canceling so much of the grant to the heirs of Mary Clarke as embraced the land under water in front of the lands and premises of the appellant were therefore of no avail; conferred no title and were not an exercise of governmental function within the scope of its powers authorized by law.

It is urged that the grant from the city under which the defendants claim was not a conveyance, but a lease with a perpetual rent reserved by the deed. That the grant last made was an exercise of an ownership inconsistent with the nature of the estate in the heirs of Mary Clarke; that when opposed to the plaintiff's grant it was a nullity, and was avoided thereby, and no rent having been paid there was a breach of the conditions contained in the grant, and the grantees and those claiming under them were simply tenants at will, and to determine this tenancy no formal entry was required, and the grant was terminated and ended by the feoffment made by the city to the plaintiff. We are unable to see how a grantor could revoke a grant without a formal entry, and without any notice to the grantee. As already is apparent, such entry was essential, and the position taken does not rest upon any valid legal ground. Conceding, however, that the principle laid down can be invoked in any such case, or that it is well founded, the answer to the position, is: First. That the conveyance is not a lease but a grant. It contains no words of demise, but it grants, bargains, sells, aliens, releases, conveys and confirms, and expressly provides that an entry is essential to render the same null and void. Second. There was no direct proof that the rent was not paid. The proceedings of the commissioners of the sinking fund are relied upon as well as the recital in the grant of the city to the plaintiff, that the plaintiff has paid the arrears of rent, for this purpose. These were but

the acts of the plaintiff's grantors, the parties from whom he derives title, and are but declarations in their own form, which are insufficient evidence to establish the non-payment of rent.

If the defendants, as grantees of the city, can be regarded as taking no title whatever under the grant, then they have a complete defense by reason of an uninterrupted possession by themselves, and by those under whom they acquired title of the upland of over twenty years before suit brought under a claim of title. There is no ground for the assumption that by reason of the relations existing between the grantors and the grantees, that there could be no adverse possession. The question whether an adverse possession could exist in favor of the original grantees against an entry of the grantors for a breach of the condition of the grant, is quite different from that between the grantees and an entire stranger to such grantees. There is a distinction between an adverse possession to bar an addition and one to defeat a deed for champerty. In the former case, according to the statute of limitations, the plaintiff, his ancestor, predecessor, or grantee, must be seized or possessed within twenty years before the commencement of the action (Code, §§ 78 and 79), and the action must be commenced within one year after the making of an entry and within twenty years from the time when the right to make such entry accrued. (Id., § 80.) If the condition in the grant of the city, under which the defendants claim, was subsequent, then, as we have seen, the defendants had a complete defense, independent of the statute of limitations. But even if it was otherwise, it would, at least, be questionable whether the statute would not commence to run from the time that the city had information that the grantees had no title to the upland. But, supposing that it was a condition precedent, and no estate was conveyed by the grant of the city, its right to enter and maintain the action became complete, and the possession of the grantees claiming title under an instrument began at the very moment the grant was executed.

From this time the statute began to run, and twenty-three years has passed from that time to the time of bringing the action, not by the city, nor by a reversioner, but by the plaintiff, an entire stranger to the first grant. The city had title to the property, and a right to convey the same under certain restrictions. As to all but the tide-way, the owner of the upland had a pre-emptive right, and in reference to that, the fee was in the city. And such pre-emptive right was not an absolute legal right to a conveyance, but an equitable claim to acquire title upon such terms as the city authorities might impose. The city was under no obligation to confer title, except upon its own terms, and the owner of the upland was not bound to take a grant upon these conditions. He might be unwilling or unable to incur the large expenditures which would be exacted, or to pay what was demanded of him. His right to acquire title was uncertain and contingent, and might never be consummated.

The bar of the statute is therefore far stronger as to a stranger than against the city. In fact, when the grant was made to the Clarke heirs in 1837, they took possession of the land, as the testimony shows, and began to fill up the lots, and have continued to possess and exercise acts of ownership over the same ever since. They acquired the right from the city by reason of their alleged title to the upland. This title was hostile in its inception to the title of the plaintiffs. To constitute an adverse possession, an entry under color or claim of title is sufficient, although it turns out afterwards that the title was in another. (*Northrop* v. *Wright*, 7 Hill, 476.) It is not necessary that there should be a rightful title, and only a color or claim of title is required, and if the entry is under even a color of title, the possession will be adverse, however groundless the title. (*Sands* v. *Hughes*, 53 N. Y., 296, and cases cited.) Here the claim was under a specific title to the upland, with proof sufficient to authorize a conclusion of possession of over twenty years by the grantor of the defendants, the Clarke heirs, and the defendants themselves. This was sufficient to bar an entry, and to

entitle the grantees to hold the land against the whole world. As against the plaintiff, the statute began to run when the Clarke heirs acquired title as owners of the upland and took possession in 1837.

It is claimed that the evidence of the plaintiff shows that, at the time of the purchase by him of the upland, the same was vacant and unoccupied. The answer to this position is, that the testimony by no means establishes this fact, and the evidence upon the whole shows that immediately after the grant of 1837, contractors employed by the grantees commenced work, and the same was continued for some time. As the case stood, there was sufficient to warrant the conclusion that the defendants and their grantees took and held possession continuously since 1837.

If the plaintiffs had claimed that there was any question of dispute in this respect, they should have requested the judge on the trial to submit the same to the jury, which was not done. In view of all the facts, the statute of limitations was, I think, a complete defense to the plaintiff's action.

There is another difficulty in the way of sustaining the plaintiff's title to the lots in question which cannot be overcome. At the time when the water grant was made to the Clarke heirs or devisees, and the proof shows as we have seen, and it must be assumed that they were in possession of the upland. The title conveyed to them was based upon this assumption, and no grant would have been made unless this important fact existed. If such was the case, then from the time of the grant to the Clarke heirs in 1837, until the recovery of a judgment in 1856, and another in 1857, under which the plaintiff was put in possession of the two upland lots, the devisees of Clarke were in possession of the upland lots, claiming to hold adversely. The statute (1 R. S., 739, § 147) declares that " every grant of lands shall be absolutely void if, at the time of the delivery thereof, such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor."

The deed from the Master in chancery to Suydam being

made under a judicial decree, on this account may be entitled to protection. But the conveyance from Suydam to Broadhead, and from Broadhead to Towle, are not embraced within this rule, and hence both of them are void. If it be claimed that the conveyance from Suydam to Broadhead was a mortgage, or an instrument of that character, and hence within the exception contained in § 148, 1 R. S., 739, the answer is, that it is not within the section last referred to, as is manifest from its phraseology, which is as follows: "But every person who, having a just title to lands, of which there shall be an adverse possession, may execute a mortgage on such lands, and such mortgage is duly recorded, shall bind the lands from the time the possession thereof shall be recovered by the mortgagee, or his representatives."

This has relation to mortgages in terms, and which are put on record as such, and not to a conveyance absolute on its face. But even if any ground exists for claiming that the deed from Suydam to Broadhead was a mortgage, the deed from Broadhead to Towle was not a mortgage, nor in the nature of a mortgage, and the most which can be claimed for it is, that it was a conveyance by the mortgagor to the mortgagee, which it is clear was not within the section last cited. It would be an evasion and a virtual repeal of § 147, to hold that these conveyances were not within its terms, and entirely defeat the object which was intended by the law-makers to keep the title and possession in harmony and to prohibit a conveyance of the one unless the other accompanied it.

The water grant to Towle, which was executed in 1859, and under which the plaintiff claims, was also void for champerty as against the defendant Remsen, who had received a conveyance of the lots in 1844, and with his tenants claimed to hold adversely. The question as to the effect of such a conveyance is fully considered in *Sands* v. *Hughes* (*supra*), and further comment is not required.

I do not understand that the distinct point is taken by the appellant's counsel that the plaintiff stands in the position of

a grantee of the premises, or as an assignee of the lessor of a demise under the provisions of 1 R. S., 747, § 23. In that point of view it would seem to be unnecessary to examine and consider a question in regard to which no light has been furnished upon the argument.

Assuming, however, that the point is now raised, we are unable to discover that the plaintiff can maintain this action upon any such ground. He is not a grantee of the demised premises of the original grantor; nor an assignee of the demise, within the provisions of the statute referred to, which was designed to apply to leases which passed and were transferred by actual assignment or grant from the original lessor to a third person. No assignment of the grant has ever been made. On the contrary, the original grant has been repudiated and attempted to be set at naught, as void and of no effect, by the original grantors, and the grant under which the plaintiff claims was contrary to and in direct opposition to the prior grant.

To entitle an assignee of a lessor to the benefit of an assignment of a lease, the assignment must be absolute, full, and unconditional. The assignee of a lessee is only liable for rent to the lessor when the entire term is transferred to the assignee. (*Davis* v. *Morris*, 36 N. Y., 569, 575; *Van Rensselaer* v. *Gallup*, 5 Denio, 460; *Eaton* v. *Jaques*, 2 Doug., 459.) The same rule should apply to the assignee of a lessor, and unless he has title to all the rights of the lessee he cannot be said to occupy his place. The instrument under which the plaintiff claims, confers no such title, as it transferred no rights whatever under the first grant, but expressly assumed to disregard the same. Clearly, this is not such a transfer as the statute contemplates, and is not within its provisions or its spirit. By section 23, above referred to, the grantees or assignees " shall have the same remedies by entry, action, distress, or otherwise, for the non-performance of any agreement contained in the lease so assigned, or for the recovery of rent, * * * as their grantor or lessor had or might have had if such reversion had remained in such

lessor or grantor." Now it is plain that the plaintiff does dot seek any remedy under the grant, and claims none, as is usual in such cases, in his complaint; but brings this action on the hypothesis that the grant was void, and has been annulled. The action is based upon a proceeding in opposition to the grant, and no claim whatever is made under or in pursuance of the same. To hold that the plaintiff was in the same position as the ordinary assignee of a lease from the lessor, would be an entire contradiction of the ground assumed and the theory of the plaintiff's case.

It is a complete answer to the right of the plaintiff to claim as grantee or assignee, that at a meeting of the commissioners of the sinking fund, it was resolved that the grant to Clarke and others of the premises in dispute under which the defendants claimed, "be and the same hereby is canceled," and subsequently a resolution was passed that the application of Towle for the land in question be granted, and a release of the same afterwards executed by the city authorities to him. These acts show already that the claim of the plaintiff does not rest upon his right, as assignee, or grantee, by virtue of the first grant, but upon the independent action of the city officials in direct and open hostility to the same, and he cannot therefore claim any right by virtue of the grant to the Clarke heirs. He cannot be allowed to insist that the first grant is operative for the purpose of defeating the defendant's title, and at the same time that it was null and void. (See *Sands* v. *Hughes, supra*).

The case was properly disposed of upon the trial, and the judgment must be affirmed.

Earl, J. (dissenting.) In 1837, the city of New York granted to certain persons the water lots on the west side of the city, now in controversy, upon the claims by them that they owned the adjacent upland lots. The grant was a lease in fee, reserving rent payable annually forever, and it contained a covenant to pay the rent, and a condition of re-entry for non-payment thereof. It also contained a covenant

upon request of the city to build certain wharves and streets along and through the premises granted, and it was also agreed and declared that "these presents and the estate hereby granted are upon this express condition, that if, at any time hereafter, it shall appear that the said parties of the second part were not, at the time of the date of these presents, seized of a good, sure, absolute, and indefeasible estate of inheritance in fee simple of, in, and to the lands. and premises on the easterly side of the line of high water, and adjoining to the water lot and ground under water hereby conveyed, or so intended to be, or if the said parties of the second part, their heirs, executors, administrators or assigns, shall make default in the performance of any or either of the covenants above contained on their part and behalf to be observed, performed, fulfilled, and kept, then, and in every such case, these presents and every article, claim, and thing herein contained, shall be absolutely null and void, and the said parties of the first part, and their successors, shall and may forthwith, thereupon, enter into and act upon the said premises hereby granted and shall thereafter be seized of the said premises."

Subsequently, prior to 1859, the plaintiff, after a long litigation established his title to the upland lots, and it appeared that the grantees in the above mentioned grant from the city did not, at the date of such grant, own such lots. The plaintiff then applied to the city for a grant of the water lots, and the city canceled the prior grant and granted the same lots to the plaintiff. The plaintiff claims. the premises in controversy by virtue of this grant to him and the defendants claim them by virtue of the prior grant, and also upon the ground of adverse possession.

That the grantees in the first grant from the city did not, at the date of their grant own the upland lots, and that the plaintiff has a regular claim of title to them has been too thoroughly adjudicated to be an open question. (*Cochran* v. *Van Surlay*, 20 Wend., 365; *Towle* v. *Forney*, 14 N. Y., 423; *Suydam* v. *Williamson*, 24 How. [U. S.], 427; *Clarke*

v. *Davenport*, 1 Bosw., 96; affirmed in this court.  *William-son* v. *Moore*, decided in this court, April Term, 1862.)

The first question to be considered is whether the condition above recited, contained in the first grant from the city, was a condition precedent or a condition subsequent.  If it was a condition precedent the grant vested no title in the grantees.

No particular words are necessary to constitute a condition precedent or subsequent.  Whether a condition in a grant shall be held to be one or the other depends upon the intention of the parties, and that intention is to be sought in the language used, construed and interpreted in the light of all the circumstances surrounding the execution of the grant. (4 Kent Com., 125; 2 Wash. on Real Estate [3 ed.], 5.; *Barruso* v. *Madan*, 2 John., 148; *Finlay* v. *King's Lessee*, 3 Peters, 374 ; *Jones* v. *Barkley*, 2 Doug., 691 ; *Doe* v. *Scudamore*, 2 Bos. and Pull., 295.)  It is not always easy to determine whether a condition is precedent or subsequent. One general rule will however solve most cases : If the thing conditioned is to exist or happen before the estate is to vest, the condition is precedent ; if after, it is subsequent.

I think it was clearly intended that the estate should not vest unless the grantees owned the upland lots.

It had always been the practice and policy of the State and of the city to grant such water lots to the owners of the adjacent upland lots.  (Act of May 5, 1786; 1 Jones and Varick, 328–332; act of March 24, 1801; 1 Kent and Rad., 297–9; act of April 3, 1807; 1 R. S., 208; chap. 58, Laws of 1826; chap. 182, Laws of 1837; chap. 268, Laws of 1846; chap. 283, Laws of 1850; chap. 285, Laws of 1852; Hoffman's Estates and Rights of the Corporation of New York, 180, 186; *Ledyard* v. *Ten Eyck*, 36 Barb., 102, 125; *People* v. *Canal Appraisers*, 33 N. Y., 461, 466.)

It must be supposed that the city intended to conform to this practice and policy, and respect the rights of the adjacent upland owners, and that hence the condition was inserted. There could have been no purpose served in vesting the estate and providing for its forfeiture upon the subsequent

failure of the condition. It is said that a condition subsequent was intended because the grantees were expected, and might be required, to make improvements upon the premises, and could not claim any compensation for such improvements if the condition were precedent, and could if it were subsequent. But the grantees took the risks of their assertion and claim of title to the upland lots, and they asked for and took the title to the granted premises on condition that they owned such lots. They required no stipulation for compensation for any improvements in case of forfeiture, and they agreed to forfeit, and that the city might re-enter and repossess the premises. When the city should take possession for breach of the condition, it would take the premises with all the improvements put upon them, and could take them in no other way. The city could have re-entered without action if the premises were vacant, and declare the forfeiture, or, if the premises were possessed, it could have enforced the forfeiture by action of ejectment. It would have had no occasion to resort to a court of equity to regain possession, and even if it could have had, it would not have been a case where such a court could release against forfeiture, or impose as a condition of the forfeiture what was not stipulated in the grant, that compensation should be made for the improvements. Hence, I am unable to perceive how the defendants are in any better position as to their improvements upon the water lots if this be held to be a condition subsequent, rather than precedent.

The evident sense and meaning of the parties was that, if the grantees did not own the upland lots, they were to take nothing by the grant. The real thing conditioned was that they were the owners of such lots. It is true that it is said that, if it should " thereafter. appear " that they were not such owners, the grant was to be void. But appear how— how made to appear and to whom ? The deed provided for no act to be subsequently done by either party. The city was not required to institute any proceedings to make the absence of title appear before it could claim a forfeiture, and

it was not required to appear in any court. The fact that the grantees did not have title existed, and hence, in a broad sense, always appeared; but certainly, if one person in all the world knew the fact, it would not be disputed that it appeared to some one. It cannot be supposed that the parties meant such an appearance should be the thing conditioned. What they intended to condition was the fact of title, and how that fact appeared, or when it appeared, was of no moment; the city protected itself by the condition. They undoubtedly intended that the grantees should take possession and hold the premises until the fact that they did not own the upland lots became known to the city, and the city, on account thereof, claimed the forfeiture, but such an intention is entirely consistent with a condition precedent.

If the conclusion thus reached is correct, the plaintiff's title to the lands covered by his grant from the city is perfect, unless the claim of the defendants that they have title by adverse possession is well founded, and that claim must now be considered.

This suit was commenced in February, 1860, and hence the adverse possession must have commenced as early as February, 1840, and continued for twenty years thereafter. Now what were the facts as to adverse possession? These lots were not enclosed prior to 1849, and it does not appear that any buildings were put upon them prior to that date, or that any wharves were built upon them, or that they were even cultivated. Prior to 1849, they were never actually occupied or possessed. The defendant Remsen took his deed of the lots in 1844, and he testified that he never, prior to 1849, occupied them, and all the possession he had he characterized in his evidence, as follows: He went on to the lots many times, and no one attacked his possession, or said he had not possession, and that was all he did. Such facts do not constitute such a possession of unenclosed vacant lots as will answer the requirements of the statute. The only other facts are these: The parties claiming under the first grant from the city, some time in 1837, commenced filling in the

water lots with earth taken from the upland lots, and there was more or less filling (how much and how continuous the work was does not appear) until 1846. It does not appear that anything was done upon the lots, or that there was any occupancy or possession of them of any kind from 1846 to 1849. All these facts fall far short of making a case of adverse possession. (*Corning* v. *Troy Iron and Nail Factory*, 44 N. Y., 577; *Miller* v. *Downing*, 54 N. Y., 631; *Wheeler* v. *Spinola*, 54 N. Y., 377; 2 R. S., 294, §§ 10, 12; old Code of Procedure, §§ 83, 85.)

A claimant of a lot may cover it with earth, or may improve it by cutting down the timber thereon, or by grading it or plowing it. While he is thus engaged in the work, he may be said to be in possession. But when he has finished the work, leaving the lot uninclosed and having no other possession of it, he cannot be said to be holding adversely. The lot is then vacant and the possession follows or goes with the true title. Hence, upon the assumption that this is a case in which the defendants are so situated that they could otherwise claim by adverse possession, the facts do not sustain the claim. It follows, therefore, if the condition be treated as precedent, that the plaintiff was entitled to recover.

But if it be conceded that the condition is subsequent as claimed by the defendants, the same conclusion must be reached. At common law, no one can take advantage of the breach of a condition subsequent, except the grantee or his heirs. (Wash. on Real Prop., 417, 418 ; 2 id., 11 ; 1 Smith's Lead. Cases, 136 ; notes to *Dumpors' Case ; Nicoll* v. *The N. Y. & Erie R. R. Co.*, 12 N. Y. 121, 131 ; *Van Rensselaer* v. *Hays*, 19 id., 68, 81 ; *Van Rensselaer* v. *Ball*, 19 id., 100, 104.) The right to claim a forfeiture and to re-enter for the breach cannot be aliened or transferred. But in 1540, by the statute (32 Henry VIII, chap. 34), this common-law rule was changed, so that in the case of a lease for life or years, the grantee of the reversion could, in his own name, sue for the rent or enforce any forfeiture, or re-enter for breach of any condition. That statute was, at an early day

(1788), substantially re-enacted in this State.. (2 Jones & Var., 184.) But it did not apply to leases in fee and the statute (chap. 98 of the Laws of 1805) applied the same rule to such leases (see authorities last cited), and the law in this State has since been as it is now, embodied in the Revised Statutes. (1 R. S., 698, §§ 23, 24, 25.) Section 23 provides that "the grantees of any demised lands, tenements, rents or other hereditaments, or of the reversion thereof, the assignees of the lessor of any demise, and the heirs and personal representatives of the lessor, grantee, or assignee, shall have the same remedies by entry, action, distress or otherwise, for the non-performance of any agreement contained in the lease so assigned, or for the recovery of any rent, or for the doing of any waste or other cause of forfeiture, as their grantor or lessor had, or might have had, if such reversion had remained in such lessor or grantor ; " and, by section 25, these provisions were made applicable to leases in fee.

As above shown, the first grant from the city was a lease in fee. By virtue of the statutes above referred to, therefore, the city could assign all the covenants contained in the grant, and all its interest in the lease, and its assignee could, in his own name, enforce the covenants and re-enter for the breach of any of them, or "for any other cause of forfeiture." No argument can make this plainer than the statute itself makes it. This plaintiff could have waived the forfeiture now insisted upon, and have sued for the rent, and he can enforce a forfeiture for the breach of any condition. The object of the statute was to entirely abrogate the common law rule in the cases mentioned, and to allow all the remedies to the assignee which the grantor had.

It appears to me, therefore, beyond question, that the decision below was wrong, and that the judgment should be reversed and new trial granted.

CHURCH, Ch. J., and RAPALLO, J., concur with MILLER, J.; ALLEN and ANDREWS, JJ., concur in result. FOLGER, J., expresses no opinion upon the question of adverse possession or champerty, but concurs in result; EARL, J., dissents.

Judgment reversed.