The Thousand Island Steamboat Company, Appellant, v. Walter I. Visger et al., Respondents.

1. Riparian Rights — Grant by the State for Purposes of Commerce Confers No Exclusive Right to Use of Dock Erected on Lands Granted. A grant by the people of the state "for the purpose of promoting the commerce of our said state and for no other object or purpose whatsoever" of lands under the water of a navigable river upon which a riparian owner has erected a dock, confers upon him no exclusive right to its use, but appropriates it to the use of all who are engaged in promoting the purpose of the grant, which is the commerce of the state, subject only to the owner's right to collect a reasonable compensation for the use.

2. Subsequent Grant Without Conditions Confers No Exclusive Right. The fact that such owner subsequently obtained a grant without conditions or reservations does not affect the situation where the state authorities have taken no action to vacate the prior grant, and it is, therefore, binding upon the grantee; and, furthermore, such officers are without power to make an unqualified grant, and it cannot be presumed that they intended to release any of the conditions under which the grantee was then holding.

*Thousand Island Steamboat Co.* v. *Visger*, 86 App. Div. 126, affirmed.

(Argued June 13, 1904; decided August 5, 1904.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 17, 1903, reversing a judgment in favor of plaintiff entered upon the report of a referee and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry Purcell* for appellant.    The St. Lawrence river, being a large navigable stream, its riparian owners have the right to erect wharves on their river frontage for their own use, and make such terms with others for the use thereof as they may see fit.    They may allow or not allow an individual or the public to land at or use such wharves.    (*C. L. Co. v. K. Nav. Co.*, 4 N. Y. S. R. 380; 115 N. Y. 667; *Wetmore v. A. W. Co.*, 37 Barb. 70; *Wetmore v. B. G. L. Co.*, 42 N. Y. 384; *Attorney General v. Cohoes*, 6 Paige, 133; *M. B. Co. v. U. & S. R. R. Co.*, 6 Paige, 154; 3 Kent's Comm. 431; Angel on Tide Waters, 171, 196; *Milldam v. Newman*, 12 Pick. 467; *Fleet v. Hedgeman*, 14 Wend. 421; *Decker v. Fisher*, 4 Barb. 592; *Ledyard v. Ten Eyck*, 36 Barb. 102.) The wharves mentioned are private and not public.    Wharves may be private or public even though owned by an individual. (*Munn v. Illinois*, 94 U. S. 113; *O'Neil v. Annette*, 27 N. J. L. 290; *Schermerhorn v. N. Y.* 3 Edw. Ch. 119; Gould on Waters [2d ed.], § 105; *Pearsall v. Post*, 20 Wend. 111, 425; *Haney v. Haney*, 2 Den. 625; *Bogart v. Haight*, 20 Barb. 251; *Swords v. Edgar*, 59 N. Y. 28; *People v. Kelsey*, 38 Barb. 269.)    The grants in question did not impose upon the lands granted any conditions or restrictions that affected the titles.    (*Archibald v. N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 581; *Abbott v. Curran*, 98 N. Y. 665; *Craig v. Wells*, 11 N. Y. 315; *Hill v. Priestly*, 52 N. Y. 635; *Woodworth v. Payne*, 74 N. Y. 196; *Board of Education v. Reilly*, 71 App. Div. 478.)

*Theodore E. Hancock* for respondent.    The state was the owner of the lands under water upon which the docks were built and had the right to regulate the use of the same and to make the grants conditional upon the erection of public docks upon said lands for purposes of commerce.    (*People v. N. Y. & S. I. Ferry Co.*, 68 N. Y. 71; *Comrs. v. Clark*, 33 N. Y.

251.) The docks in question are public docks by statute and also long-continued user and the defendants are entitled to the use of the same upon payment of reasonable dockage fees. (*Dutton* v. *Strong*, 66 U. S. 32; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 581; *White* v. *N. T. Co.*, 168 N. Y. 149; *Post* v. *W. S. R. R. Co.*, 123 N. Y. 580; *A. D. Co.* v. *Leavitt*, 54 N. Y. 35; *Andrews* v. *Nat. S. R. Co.*, 72 App. Div. 551; *Harper* v. *Williams*, 110 N. Y. 260; *Turner* v. *P. F. Co.*, 21 Fed. Rep. 90; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 39 N. Y. Supp. 4; *Abbott* v. *Curran*, 98 N. Y. 665.) The assumption by plaintiff of exclusive possession of the wharves in question is contrary to the terms of the grants by the state and against public policy. (*Matter of Davies*, 168 N. Y. 89; *G. F. Co.* v. *Pennsylvania*, 114 U. S. 196; *Henderson* v. *New York*, 92 U. S. 259; *H. R. R. Co.* v. *Husen*, 95 U. S. 465; *People ex rel.* v. *Wemple*, 138 N. Y. 2; *Kidd* v. *Pearson*, 128 U. S. 1.) The grantees named in these patents of 1883 and their successors entered into certain contractual relations with the state and also into certain contract obligations for the benefit of the traveling public which the plaintiff is asking a court of equity to assist in violating. (*Coster* v. *Mayor, etc.*, 43 N. Y. 399; *Buchanan* v. *Tilden*, 158 N. Y. 109; *Lawrence* v. *Fox*, 20 N. Y. 268.)

GRAY, J. This action was brought to obtain a decree, which should enjoin the defendants from using certain wharves, or docks, at points upon the St. Lawrence river, for their business purposes. The plaintiff, a steamboat company, had been, for some years, engaged in the business of carrying passengers and freight upon the river and the defendants had been engaged in a like business with steamboats of their own. The plaintiff claims that it had acquired, through leases from the owners, an exclusive right to make use of the "Fine View," "Cornwall," and "Crossmon" wharves, in, or near, Alexandria Bay. This claim has been sustained in the courts below as to the first of these wharf properties; but as to the others, the judgment recovered by the plaintiff, at Special

Term, was reversed by the Appellate Division and it was there decided that the conditions contained in grants heretofore made by the state to the owners of the properties subjected their ownership to the rights of the public, to the extent necessary for the purposes of commerce. So far as the Fine View wharf is concerned, the disposition made below is acquiesced in by both parties. The plaintiff appeals from the determination of the Appellate Division in relation to the other two wharves; but I think in that there was no error. The possession of the plaintiff's lessors did not permit them to limit the use of the wharves by leases, or otherwise, in favor of any particular person, or business.

These wharves had been built out into the St. Lawrence, some fifty years ago, by the owners of the shore, or uplands, and they had been, down to the time of commencing this action, practically, open to general use by all of the steamers and boats engaged in navigating the river, for a compensation charged by the wharf owners. Cornwall and Crossmon, in 1883, applied to the commissioners of the land office for a grant of the lands under water, on which their docks stood; which application the commissioners granted, by virtue of the power conferred upon them by the legislature of the state to make grants of lands under the waters of navigable rivers, or lakes, to the proprietors of the adjacent lands, " as they shall deem necessary to protect the commerce of this state, or proper for the beneficial enjoyment of the same by the adjacent owner." (Chap. 283, Laws of 1850.) Accordingly, letters patent were caused to be issued, which, in each case, recited that the grant by the People of the state was made " for the purpose of promoting the commerce of our said State and for no other object, or purpose, whatsoever and with the reservations and upon the conditions hereinafter mentioned." One of such conditions was that if the grantee should not, " within five years from the date hereof, actually appropriate and apply the described premises to the purposes of commerce by erecting a dock, or docks, thereon and filling in the same," then the grant should become void. Holding under this title

from the state, the grantees made the leases to the plaintiff, under which it claims an exclusive right to use the docks leased. The plaintiff's rights are to be measured by such rights as the People of the state had granted to its lessors. If their ownership was subject to public rights of user, as the necessities of commercial traffic might require, then the plaintiff gained no exclusive possession by its leases. As riparian owners, Cornwall and Crossmon, originally, in building a dock out into the river, but exercised the right, at all times, conceded to such ownership. The proprietors of lands upon navigable waters are entitled to the right of access to the navigable part of the river and to the right to make a landing, wharf, or pier for their own use, or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever these may be. (3 Kent's Com. 431; *Yates* v. *Milwaukee*, 10 Wall. 497; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79.) Their maintenance of their docks was within their own control and, if they chose to limit their use in any way, others could not question their right to do so. It was, then, a matter between them and the state; which, as the sovereign power, possessed authority to interfere and to regulate their use in the public interest if, or whenever, the structure constituted a nuisance, or an obstruction to navigation. In this case, the fact is that there was a general use of these docks, upon payment of a compensation charged, both before and after the grants of 1883. There was not, necessarily, a dedication of the properties to the public; but that they had been open to public commercial uses is of significance. A dock may be private, or public, though owned by an individual, (*Dutton* v. *Strong*, 66 U. S. 23; *Munn* v. *Illinois*, 94 ib. 113), and the use it has been put to, at least, furnishes the basis for an inference of the owner's intention in its construction and maintenance. Therefore, we have evidence of what the owners held out as the intended use of the docks and their application for a grant of the land by the state, with the terms of the grant itself,

permit of no other conclusion than that the wharves were intended to be, and are there, for the purposes of commerce. The statute provided that the commissioners of the land office might make grants of lands under water as they might deem "necessary to promote the commerce of the state, or proper for the purpose of beneficial enjoyment of the same by the adjacent owners." Whatever might be the nature of the title and the right conferred, had the grant been for the purpose of the owner's *beneficial enjoyment*, the title and the rights actually conferred were conditioned upon the appropriation of the premises to the purposes of commerce through the erection of docks and they were granted for no other purpose.

I think that the case falls within the authority of *Harper v. Williams*, (110 N. Y. 260), where the plaintiff sought to restrain the defendants from using his dock. He owned property on Long Island sound and had constructed a dock, under letters patent of the state granting to him "the power and authority to erect any dock or docks that shall be necessary to promote the commerce of our said state, upon the land, under water, hereinafter described, and the authority to collect from persons using such dock or docks reasonable and accustomed dockage, to be regulated by our legislature." The plaintiff's demand for an injunction was denied and it was held that, under his grant, he acquired no other right than to make a wharf, or dock, for the use of the public. It was said that "the consideration of the grant is the erection of a dock, not for private use according to the views or interest of the grantee as an individual, but such dock as 'shall be necessary to promote the commerce of the state,' and upon a compensation 'from persons using it,' not fixed at the whim or by the caprice or pleasure of the grantee, but by the legislature." It was further observed with respect to the right conferred by the letters patent that "that right seems to be inconsistent with an individual control, which, if now tolerated, would permit him to substitute his own pleasure for the public interest and devote a dock, which came into existence because 'necessary to promote the commerce of the

state,' to such domestic business or other uses as his views of individual interest or profit might suggest. The incongruity of such a conclusion with the purpose declared by the state, through its commissioners, is scarcely lessened by the assertion of the plaintiff 'that the dock in question did subserve the interests of commerce, though its use was limited to the needs of the immediate neighborhood.' The grant provides for the whole state, and not the traffic of a single neighborhood." Though there was a question of dockage fees, that was not the dominating provision of the grant, nor that considered by the court. The case decided, under provisions of the statute of 1835, not materially dissimilar to those of 1850, with respect to the question now under discussion, that a grant by the state of this nature appropriates the dock, or wharf, erected to the use of all, who are engaged in promoting the purpose of the grant, which is the commerce of the state; subject, only, to the owner's right to collect a reasonable compensation for the use.

The case of *Wetmore* v. *Brooklyn Gas Light Co.*, (42 N. Y. 384), does not support the position of the plaintiff; for the special acts there in question, and under the authority of which the bulkhead and other structures had been erected in the East river, gave no right to the public to use them. The argument of the plaintiff in that case, suing as one of the public, that the legislature intended, only, to confer a franchise to construct wharves, which were subject to the use of the public for commercial purposes, was answered, in the opinion of Judge Grover, in the language, "that there is nothing in the acts showing an intention to confer a franchise, or a title, subject to such rights in the public. * * * If there had been an intention to confer the right claimed upon the public, the right of erecting the structures and filling in would have been given upon the condition that the public should not only have the right to use the structures and the land acquired by the filling, but also the shore lands of the owners to an extent sufficient to make the right available. The absence of any provision conferring any right upon the public to use any

portion of the structures or land made by filling in, or that upon the margin, is conclusive that the legislature did not intend to confer any such right."

Nor does the fact that there was a subsequent grant by the state to Crossmon, in 1897, which was without conditions, or reservations, affect the situation. Crossmon appears not to have made improvements, within the time specified in the grant of 1883, and, therefore, applied for the subsequent grant; but as the state authorities had not taken action to vacate the prior grant, it was binding upon the grantee. If the state had not resumed its title by annulment of its grant, the title remained in Crossmon, subject to the terms imposed. (*Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574.) But it is, furthermore, clear that, under the authority with which the state officers were invested to dispose of the lands of the state, they could not make any grants, except for the purposes stated in the statute. They were without any power to make an unqualified grant, and it will not be presumed that they intended by the grant of 1897 to release any of the conditions under which the grantees were then holding.

For these reasons, which are in harmony with the views expressed below, I advise the affirmance of the order appealed from and that judgment absolute be rendered upon the appellant's stipulation; with costs to the respondents in this court.

PARKER, Ch. J., BARTLETT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Order affirmed, etc. _____