THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* AMERICAN SUGAR REFINING COMPANY OF NEW YORK, Defendant.

(Supreme Court, Kings Special Term, February, 1917.)

Lands under water — grant of — what is promotion of commerce — when title to lands under water determinable by seniority — forfeiture of lands under water — pleading — statutes — when state has absolute right to part with its lands under water.

As between two grants of land under navigable waters validity of title is determinable by seniority.

The state has an absolute right to part with its title to lands under navigable waters, either by beneficial enjoyment grants or commerce grants, unless restrained by constitutional checks.

A grantee of land under water for the purpose of promoting commerce may erect private manufacturing plants and is not restricted to the erection of docks to which the public has the right of user upon payment of reasonable fees.

Where forfeiture of grants under the waters of the East river to promote the commerce of the state is sought for violation of conditions subsequent, such conditions must appear essential to the purpose of the grant, clear in terms and application, and where the grantees have filled in the land in performance of the dominant condition the land becomes theirs with all the attributes of ownership in fee, and where the grants do not provide against the erection of buildings, refineries and manufactories, and the condition as to building docks is too general. and indefinite to be enforced by a specific performance, defendant's motion for judgment on the pleadings will be granted.

Without. a grant from the state the upland owner as well as he who by filling in becomes the owner in fee of filled-in lands has the right to erect a private dock as part of his own right of access.

MOTION for judgment on the pleadings.

Egburt E. Woodbury and Robert P. Beyer, for plaintiff.

James M. Beck and Henry F. Cochrane, for defendant.

KELBY, J. In this suit the attorney-general asks a decree vacating certain letters patent, or grants, to lands under the waters of the East river, between South First and South Fifth streets in the part of Brooklyn known as Williamsburg. These lands are used by the defendant, together with the adjacent upland which it owns, in its business of sugar refining, buildings of many stories being erected thereon.

There are eight of these letters patent, three issued in 1868–1869, three in 1875, and two in 1883–1884. Those first mentioned are for the purposes as recited " of promoting the commerce of the state, or for the beneficial enjoyment " of the grantee. The lands granted thereby were also included in the grants issued

in 1883–1884, which omit the beneficial enjoyment feature or recital, as also do the grants issued in 1875 to land not included in any other grants. The complaint alleges that, " by applying for and accepting " the patents of 1883–1884, " the applicants surrendered * * * whatever rights they possessed," by virtue of the beneficial enjoyment grants of 1868–1869. Other details of the complaint, as well as the prayer for judgment, imply the hypothesis of continuing force and validity in the grants thus said to have been surrendered. Furthermore, all the grants were issued upon certain express conditions which do not include any surrender of rights under the earlier grants, and the applicants for the grants of 1883–1884 were not the same parties to whom the earlier grants were issued, nor is any transfer to them alleged. It is urged that the alleged surrender is supported by the fact that the applicants for the later grants struck out, from the printed form of application, the words providing for beneficial enjoyment. The inference from this is not of an intent to surrender. If these rights had already passed from the state under the earlier grants, there was no longer power to grant them, and application therefor would have been 'legally ineffectual in any case. The state could not grant the same thing to one which it has previously granted to another. As between two patents, validity and title is determinable by seniority. Chancellor Kent, in *Jackson* v. *Lawton,* 10 Johns. 23, said: " If the lands passed by the first patent, the second patent is without any operation, and void." See, also, *Townsend* v. *Trustees of Brookhaven,* 97 App. Div. 316; *Thousand Island Steamboat Co.* v. *Visger,* 179 N. Y. 206, 213; *Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 144 id. 75, 86. The allegation as to the surrender of the earlier patents, if material to plaintiff's case, thus appears to be not an accurate statement of fact, but

an inaccurate conclusion from the actual fact. The later or commerce grants comprised all the property embraced in the earlier grants,— all now making one parcel; and it is settled by numerous authorities that the state may, either by beneficial enjoyment grants, or by commerce grants, part with its title to lands under water. *People* v. *New York & S. I. Ferry Co.,* 68 N. Y. 71, 79; *Abbott* v. *Curran,* 98 id. 665; *People* v. *Steeplechase Park Co.,* 218 id. 459, 483; *Langdon* v. *Mayor,* 93 id. 128, 156; *Coxe* v. *State,* 144 id. 396. This power results from the sovereignty of the state and the absolute control which it has over all the public domain. The right of the state, by its duly constituted authorities, to grant the land under navigable waters, is as absolute, unless restrained by constitutional checks, as its right to grant the dry land which it owns. In *People* v. *Steeplechase Park Co., supra,* it was pointed out, by Chase, J., that in the history of this state thousands of such grants have been made, some with and some without restrictions, some absolute, and some conditional. " Upon the faith of the title to the lands so conveyed in fee there are now docks, wharves and buildings devoted to commerce, and also lands filled in, built upon and·beneficially enjoyed worth millions of dollars." In brief, instances abound testifying to the power, and affirming the public policy. The discussion may be narrowed to the particular contention of the plaintiff in this action, which is that grants for the purpose of promoting commerce do not authorize the erection of private manufacturing plants, but are restricted to the erection of public docks, or docks to which the public has the right of user upon payment of reasonable fees. Reference is made to definitions and distinctions between commerce and manufacture, in general economic literature, and in cases interpreting statutes

enacted under the Federal power to regulate commerce, such as *United States* v. *Knight Co.*, 156 U. S. 1; *Kidd* v. *Pearson*, 128 id. 1. All these throw little or no light upon the sense in which the term " promoting commerce " is used in land grants issued by the state of New York. The legislature of this state, in the various relevant statutes, has never enacted that the exclusion of manufacturing from such lands was a way of promoting commerce, or that the erection of docks was the aim, the end and the measure of accomplishing that result, nor have the courts declared any such limitation upon the legislative power. *Coxe* v. *State, supra*. In a general and practical sense, commerce does include manufacture, as creative of a very large part of its substance, while docks are not the substance of commerce, but adjuncts, incidents and conveniences to its exercise. *People* v. *New York & S. I. Ferry Co., supra*. It is interesting to trace in the land grant history of the state, which has been brought to the judicial notice of the court, how this rather naive conception of commerce, as consisting only of docks, has grown up. In settling the form of grants to promote commerce, the commission has included, though not invariably, the requirement of dock or docks apparently as one particularization of the means whereby commerce was to be promoted. This requirement which, when made in the form of all grants, at least tends to become arbitrary and artificial, is based upon an administrative extension of the individual interpretation in certain cases in the courts to a general rule of construction for all cases. These cases are *Harper* v. *Williams,* 110 N. Y. 260, and *Andrus* v. *National Sugar Refining Co.,* 72 App. Div. 551, in both of which the erection of a public dock was the very end and purpose of the grant. It was held that such a right conferred not an estate in the lands, but

a franchise only. The grants here involved are radically different. There is nothing therein showing an intention merely to confer a franchise, easement or privilege, or even a title subject to public rights of user. They are grants of an estate in the lands. *Hoboken* v. *Penn. R. R. Co.,* 124 U. S. 656; *People* v. *Steeplechase Park Co., supra.* The decisive inquiry, then, is whether the generality and scope of the operative words of transfer in the grants must now be defeated by impinging thereon an obligation to erect public docks. The conditions expressed were two. The complaint emphasizes and rests upon one only, that of building a dock. Compliance with the other condition, which was filling in the low lands, appears as a fact, in the case, by inference from the express requirements of the grant and the silence of the complaint. There is no charge that the lands have not been filled in; and how, without it, could there have been erected the great manufactories and refineries spoken of in the complaint  The presumption is, that this condition has been fully and properly performed, and with no default in that respect must it be held that the omission to erect a dock or. docks invalidates, for the future, not only the right to erect docks, but the title to the lands filled in, and extensively improved by an establishment affording employment and livelihood to many? The answer ought to be found in a comparison of the relative essentiality and certainty of the two conditions. On the one hand the filling in of the submerged lands was certainly of importance in itself. The great extent to which, not only New York city, but other great cities in this country and abroad have been improved, built up and beautified by the reclamation and filling in of adjacent low lands has been often referred to. The filling in also had a very direct relation to the promotion of

commerce, not only in the sense of intercourse by navigation, for the result would be the straightening of the stream and the control of its current, but in the broader sense embracing every purpose, useful, necessary or convenient for the promotion of public prosperity. *Coxe* v. *State, supra; People* v. *State, supra.* The obligation to fill in was specific as to metes and bounds, and was clearly capable of compulsory performance by appropriate judicial process, had there been default therein. It was also precise in legal effect. It was similar to that under consideration in *Furman* v. *City of New York,* 5 Sandf. 31; *Williams* v. *City of New York,* 105 N. Y. 419, where it was held that riparian owners who were required to fill in the space, under water, intermediate their lands and the bulkhead line of New York city, took, by so doing, the absolute title in fee to the filled in lands. On the other hand, as to the dock or docks, the grants are utterly indefinite. It seems assumed in the argument that a dock is a pier extending into the stream, but the word dock itself does not always, or even usually, import this signification. A dock may be a pier, or it may be a slip between two piers, or, *vice versa,* two piers inclosing a slip; or it may be a bulkhead, or a sea-wall, to filled in lands. These differences, and others, are pointed out in Bouvier Law Dict.; 29 Cyc. 341; 40 id. 890; *Fitchburg R. R. Co.* v. *Boston & Maine R. R. Co.,* 3 Cush. 58, 87; *Matter of Parsons,* 191 U. S. 17, 33. How can it be said, in which, if any, of these possible meanings, the word was used in these grants? The grants themselves afford no clue. There is no specification of size, structure, location, material, adaptability, or use of the dock or docks. How, if a specific performance were being sought, could this condition be enforced by decree? There is not even any certainty how many

Supreme Court, February, 1917.    [Vol. 98.

docks are to be built — each one of the eight grants speaks of "a dock or docks" to be erected, and this uncertainty is reflected in the complaint. There is no test of local necessity prescribed. If every one of these grants carried the rigid and imperative condition of building a dock or docks, irrespective of need or use for them, the result might be a succession of unused and useless docks stretching along the water front. And where, finally, in these grants is there any direction that these vague, unlimited docks are to be public docks, or docks open to public use? If such was the intention it might have been adequately carried out by express words, such, for example, as were used in the grant involved in the case of *Harper* v. *Williams, supra.* It was said by Judge Grover, in a case which in its salient features is analogous to the present, that the absence of any such provision was conclusive that the grants did not confer any such right. *Wetmore* v. *Brooklyn Gas Co.,* 42 N. Y. 384. See, also, *People* v. *Steeplechase Park Co., supra.* In view of these considerations, it cannot fairly be said that there is in this condition of the erection of a dock or docks any such definite or ascribable meaning as requires the annulling of these grants, because of the omission to erect a public dock or docks. Conditions subsequent are not favored in the law, and are construed strictly because they tend to destroy estates, the rigorous exaction of them being a species of *summum jus,* often hardly reconcilable with conscience. When forfeiture is sought for violation, they must appear essential to the purpose of the grant, clear in terms and application, and not resting in inference or recital. *Woodworth* v. *Payne,* 74 N. Y. 196; 4 Kent's Com. 130. Such conditions should be declared void, if they lack apprehendable meaning or application, within the general doctrine of the law to that effect, a striking illustra-

tion of which is found in *People* v. *Briggs,* 193 N. Y.
457. Especially should this conclusion be now adopted,
when it is noted that these grants were not the sole
support of the right of the upland owner to erect a
private dock. Without a grant from the state the
upland owner, and, it must follow, he who, by filling
in, becomes the owner in fee of filled in lands, has
the right to erect a private dock, as part of his own
right of access. *Thousand Island Steamboat Co.* v.
*Visger, supra; Barnes* v. *Midland R. Terminal Co.,*
193 N. Y. 378, 383; *Town of Brookhaven* v. *Smith,*
188 id. 74, 78. This is the right as well of riparian
owners, whose lands border upon the bays of seas, or
navigable waters, as of litoral owners, whose lands
front upon the surf-beaten shore of the open sea.
*Barnes* v. *Midland R. Terminal Co., supra.* All the
other cases cited in support of the plaintiff's conten-
tion have been examined, and are not authorities for
the proposition that docks erected under land grants
must be public docks for the promotion of commerce.
In *People* v. *New York & S. I. F. Co., supra,* what
was decided was that docks must not encroach upon
or transgress the prescribed requirements of the
grant. In *Coxe* v. *State, supra,* and in *Matter of
Long Sault Development Co.,* 212 N. Y. 1, what
was established was that the state cannot make
grants for purely speculative purposes, or trans-
fer its power to control navigation, or its sovereign
functions, for private exploitation. *Thousand Island
Steamboat Co.* v. *Visger, supra,* approaches most
nearly to the plaintiff's contention. A commerce grant
was involved, and it was held that the condition of the
erection of a dock required a public dock, but that
construction was adopted, not as of law, or solely
by the terms of the grant, but as a fact, by extrinsic
evidence of the grantee's intention to devote the dock

to the public use.  There is no such suggestion in this case; rather the contrary.  There was no representation of intention to erect a public dock, and the names of some of the applicants for the grants indicated plainly their ordinary occupation of sugar refining.

My conclusion is that the clear and essential condition, and, therefore, the dominating condition was that of filling in the lands; and since the grantees have performed this condition the lands have become their own, with all the attributes of ownership in fee, a most important one of which is the right to apply it to any use consistent with the ownership.  There is no prohibition expressed in the grants against the erection of buildings, refineries and manufactories.  The principles of fair and rational construction imply that none were intended, and the court cannot import such into these grants, to the diminution of the defendant's title.  The defendant's motion for judgment on the pleadings is granted, with costs.

Motion granted, with costs.