THE TRUSTEES OF CALVARY PRESBYTERIAN CHURCH OF BUFFALO, Plaintiff, *v.* GEORGE P. PUTNAM and Others, Defendants.

Supreme Court, Erie County, May 10, 1927.

Deeds — condition subsequent — property was conveyed to plaintiff on condition it would maintain premises as place of worship and raise specific sum for upkeep thereof — grantors' heirs subsequently executed instrument releasing plaintiff from condition requiring raising of fund and quitclaim deed releasing plaintiff from covenants — reversionary interest ceased on execution of quitclaim deed — declaratory judgment granted under Civil Practice Act, § 473.

The plaintiff's grantors deeded property to it subject to a condition that it would maintain a place of worship thereon and raise a specific sum of money annually for the upkeep thereof. This latter condition was released by an instrument executed by all the then living heirs and next of kin of plaintiff's grantors, and by a quitclaim deed subsequently executed by all the then living heirs at law and next of kin of the grantors by which they covenanted to release plaintiff's trustees from the covenants and conditions contained in the original deed.

Plaintiff took title in fee to the property and no estate, right or interest remained in the grantors or their heirs or next of kin except a reversionary interest from

which the defendants, heirs at law and next of kin of the grantors, were cut off by the execution of the quitclaim deed and forever estopped and barred from asserting any claim to the property.

Under the circumstances a declaratory judgment is granted under section 473 of the Civil Practice Act and the Rules of Civil Practice.

APPLICATION for declaratory judgment.

*Mitchell & Staples* [*Charles J. Staples* of counsel], for the plaintiff.

*George P. Keating* [*Daniel J. Kenefick* of counsel], for the defendants Putnam and Keating.

*Wellman, Smythe & Scofield* [*Alfred G. Reeves* of counsel], for the defendants Palmer and O'Donnell.

NOONAN, J.   Under section 473 of the Civil Practice Act and the Rules of Civil Practice applicable thereto, the plaintiff is seeking a declaratory judgment upon the pleadings as to whether or not the defendants have any right or claim in the nature of a possible reverter, or otherwise, in the real property owned by the plaintiff and described in the complaint herein.

The undisputed facts are:

That the plaintiff is a religious society duly incorporated under and pursuant to the Laws of the State of New York.

That on or about July 1, 1862, George Palmer and Harriet Palmer, his wife, by deed, " granted, bargained, sold, released, conveyed and confirmed and by these presents do grant, bargain sell, release, convey and confirm unto the said party of the second part and their successors," the real property described in the complaint herein, " together with all and singular the church edifice, dwelling house, tenements and appurtenances situate upon said several pieces or parcels of land or either of them or thereunto in anywise belonging or appertaining, and the rents, issues and profits thereof; and also all the estate, right, title, interest, claim, demand, dower and right of dower of the said party of the first part, in and to the same and every part and parcel thereof either in law or equity.   To have and to hold the said premises and every part and parcel thereof with the edifice, buildings, hereditaments and appurtenances thereon situate or thereunto belonging to the sole and only proper use, benefit and behoof of the said party of the second part and their successors forever.   Provided always and this Indenture is made upon the conditions hereinafter recited and subject to the performance of the covenants and agreements herein contained to be kept and performed by the said party of the second part and their successors; and upon the breach of any or either of said conditions, it shall and may be lawful for the said party of the first part or their heirs or assigns to enter into and

upon the premises hereby conveyed, and every part and parcel thereof and take possession of the same as in his or their former estate; and thereupon the estate hereby granted shall cease and determine or in case of the nonperformance of the covenants and agreements herein contained to be kept and performed by the party of the second part and their successors it shall and may be lawful for the party of the first part, their heirs or assigns at their election to have, take and use all lawful means to compel the performance of said covenants and agreements, and such election shall in no wise impair or prejudice the right to insist upon a forfeiture of the estate and a right to re-enter for any breach of any of said conditions subsequent to such election."

There is no covenant of warranty in the deed, but there are two limitations, in the nature of conditions subsequent.

The first one reads as follows:

"*First.* The said party of the second part and their successors shall maintain, perpetually upon said premises, the public worship of God and the ordinances of the Christian church according to the doctrines, polity, order and mode of worship of the Presbyterian Church and the church organization thus established and maintained shall have a regular ecclesiastical connection with the General Assembly of the Presbyterian Church in the United States of America, commonly called the Old School by whatever name it may hereafter be known and in case this branch of the Presbyterian Church shall be hereafter united with any other ecclesiastical organization holding and observing in substance the doctrines and order of worship of the said Presbyterian Church then and in such case and so long as such union shall continue the said party of the second part and their successors shall maintain an ecclesiastical connection with the body formed by such union, by whatever name the same may be known and designated."

The second condition provides for raising $1,000 yearly for the upkeep of the church property until an improvement fund of $15,000 was accumulated, the income from which was to be used for a like purpose.

The plaintiff accepted the property conveyed to it subject to the said conditions and covenants and has ever since maintained a place for the worship of God in accordance with the first condition in said deed.

On September 19, 1864, George Palmer, the grantor, died, and on or about September 9, 1872, his widow, Harriet Palmer, and all his then living heirs at law and next of kin, namely, Everard (Edward) Palmer and Anna Palmer Fitch, his children, and George P. Putnam, Harriet O. Putnam and Anna J. Keating, the defendants

herein and grandchildren of said grantors, executed an instrument in writing, and for a valuable consideration, purporting to " release acquit and discharge the said Trustees of Calvary Church aforesaid from compliance with that part of condition second contained in the deed of conveyance by the late George Palmer and Harriet his wife of the Calvary Church property on Delaware Street, in the said City, as requires the said Trustees to raise a fund of One thousand dollars in each and every year until the first day of January One thousand eight hundred and eighty."

On or about August 7, 1893, all the then living heirs at law and next of kin of said grantor, George Palmer, and Harriet Palmer, his wife, to wit, said Everard Palmer, son, and said George P. Putnam, Harriet O. Putnam and Anna J. Keating, grandchildren, gave to the trustees of Calvary Presbyterian Church of Buffalo, the plaintiff herein, a quitclaim deed to all the premises described in the complaint herein, by which, for a valuable consideration, they agreed to " remise, release and forever quitclaim unto the said party of the second part, its successors and assigns forever " the real property in question.

The said quitclaim deed also contained the following covenants:

"And the said parties of the first part for themselves their executors administrators and assigns do hereby release and forever discharge the party of the second part and the property aforesaid from each and every covenant and condition contained in a certain deed from George Palmer and Harriet his wife recorded in Liber of deeds 214 at page 438 on 28th day of July, 1862.

"And said parties of the first part do hereby severally each for himself or herself covenant and agree with the said party of the second part and its assigns that they will not at any time or in any manner enter upon or interfere with the enjoyment of such premises or any part thereof by the said party of the second part its successors or assigns or in any manner seek to inforce the aforesaid covenants and conditions or either of them.

"And the said parties of the first part do also and in like manner covenant and agree with the said party of the second part, its successors or assigns that they will at any time when requested so to do execute severally or with any other party or parties any further or other instrument needed for the assuring and investing of the title to the said premises in the said party of the second part or its successors or assigns and take or join in any proceeding or proceedings that may be necessary or desired to be had or taken for the purposes aforesaid but without expense to said parties of the first part or either of them. Nothing herein contained shall create a monied liability on the part of said parties of the first

part or either of them to the said party of the second part its successors or assigns.

" * * * together with the appurtenances and all the estate and rights of the said parties of the first part in and to the said premises to have and to hold the above described premises unto the said party of the second part its successors and assigns forever."

The defendants George P. Putnam, Harriet O. Putnam and Anna J. Keating all signed the release and quitclaim deed hereinbefore mentioned, and the defendants Winfred Palmer and Doris Palmer O'Donnell are the grandchildren of Everard Palmer, who also signed said release and quitclaim deed; and it is conceded that the defendants herein are the only descendants of the original grantors George Palmer and Harriet Palmer, his wife, and the only persons who have any possible right of reverter or other claim in or to the real property affected by this action.

Certain principles of law pertinent to the decision of this case are undisputed and are amply supported by a long line of decisions.

The limitations in the deed of the property to the plaintiff herein are clearly " conditions subsequent."  (12 C. J. 410; *Norton* v. *Valentine*, 151 App. Div. 392, and cases therein cited; *Moore* v. *Moore*, 47 Barb. 257; *Towle* v. *Remsen*, 70 N. Y. 303, 309; *Nicoll* v. *New York, etc., R. R. Co.*, 12 id. 121.)

This plaintiff took title in fee, and no estate, right or interest remained in the grantor or his heirs.  (*Nicoll* v. *New York, etc., R. R. Co., supra; Towle* v. *Remsen, supra; Upington* v. *Corrigan*, 151 N. Y. 143, 153; Real Prop. Law, § 31.)  All that remains is the possibility of reverter, which is not descendible or devisable, either at common law or under the Revised Statutes, but upon the death of the grantor before re-entry it devolves upon his heirs at law by force of representation and not by descent, and is not assignable.  (*Nicoll* v. *New York, etc., R. R. Co., supra; Upington* v. *Corrigan, supra; Towle* v. *Remsen, supra; People* v. *Wainwright*, 237 N. Y. 407, 411.)

I think it must also be conceded that the grantor can release the conditions of reverter.  In *Upington* v. *Corrigan* (*supra,* p. 149) the court said: " She [grantor] had an election to enter for condition broken and she could release her right to do so;" and in *Rice* v. *Boston & Worcester R. R. Corp.* (12 Allen [Mass.], 141) it was held that the right or possibility of reverter which belongs to a grantor of land on condition subsequent is extinguished by a conveyance thereof by deed to a third person (son of grantor) before entry for breach of condition.

The real question is whether or not the defendants, for any reason or reasons, are now barred from all possible rights of reverter or

forfeiture in the real property affected by this action, and in deciding this question we are confronted by the fact that conditions subsequent are not favored by the courts and are strictly construed against the grantor. (2 Washb. Real Prop. [6th ed.] §§ 942, 962; *Ludlow* v. *N. Y. & H. R. R.*, 12 Barb. 440; *Martin* v. *Ballou*, 13 id. 119; *Ives* v. *Van Auken*, 34 id. 566; *People* v. *Am. Sugar Ref. Co.*, 98 Misc. 703, 710; affd., 182 App. Div. 212; *Nicoll* v. *New York, etc., R. R. Co., supra.*)

The plaintiff contends that all the defendants have been cut off from all possible right of reverter or forfeiture by the quitclaim deed heretofore mentioned, while the defendants claim that said deed was mere nullity because no property right remained in the defendants that was transferable by deed. The "ancient lore of real estate law" probably favors the contention of the defendants, but the trend of modern decisions seems to sustain the plaintiff's theory.

The defendants, as representatives of plaintiff's grantor, have succeeded to the rights of said grantor. Why, then, are they unable to do what he could do? The grantor could release the "conditions subsequent" by giving an unconditional deed (*Upington* v. *Corrigan, supra; Rice* v. *Boston & Worcester R. R. Corp., supra*) and, logically, his representatives can do the same. Their position is analogous to that of a wife with an inchoate right of dower, which can be released by the wife by voluntarily joining in a deed or mortgage of the property with her husband. (19 C. J. 522; *Hinchliffe* v. *Shea*, 103 N. Y. 153.) Such a release does not pass any estate, but operates as an *extinguishment* of such dower right in favor of the holder of the title. (*Hinchliffe* v. *Shea, supra.*)

There is ample support for the contention of the plaintiff that those who signed the aforesaid quitclaim deed, and all their heirs at law, or representatives, thereby released all possible right of reverter in the property affected by this action and are forever estopped and barred from asserting claim thereto.

In *Berenbroick* v. *St. Luke's Hospital* (23 App. Div. 339, 343) the court said: "Any deed by which the original grantor *or his heirs* undertakes to transfer, assign or grant the land or the reversion of it while it may be *ineffectual to convey title* to the grantee, does operate to put an end to the rights of the grantor."

The performance of a condition subsequent may be excused or waived (2 Williston Cont. 1310, § 678; *Duryee* v. *Mayor*, 96 N. Y. 477, 495), and the heirs, who have a right to enter upon condition broken, "lose their rights if they should convey away the reversion in them" (Tiedeman Real Prop. [4th ed.] § 207); and any attempted assignment of the right of re-entry, although void, "will have the effect

of destroying the grantor's right to enforce the condition, which is thereafter *in effect* non-existent." (Tiffany Modern Law Real Prop. § 75.) " Where the condition has been once performed, and the estate vested thereunder, a subsequent failure to continue the performance of the condition does not, of itself, divest the estate. As the breach of a condition subsequent does not forfeit or divest the estate vested, but confers merely a right of entry on the grantor or his heirs, the performance of *the condition may be specifically or impliedly waived by them.*" (1 Gerard N. Y. Real Prop. [6th ed.] § 289.) If the conditions in said deed cannot be released, they are void because they suspend indefinitely the power of alienation.

The plaintiff has complied with the said conditions for almost sixty-five years, and the conditions, *having been performed, are gone forever,* and the grantee has a complete fee and the grantor and his successors and representatives have no further reversionary rights. (*Mead* v. *Ballard,* 7 Wall. 290, approved in *Newton* v. *Commissioners,* 100 U. S. 548, 562; *Maddox* v. *Adair,* 66 S. W. 811, 814 [Tex. Civ. App.]; *Manton* v. *South Shore Traction Co.,* 104 N. Y. Supp. 612.)

It has long been the practice of the courts of this State to regard building restrictions as obsolete when changed conditions make it inadvisable to enforce them. The same sensible rule of construction is applicable to the instant case where the changes, beyond the control of the parties hereto, have made it very hard to carry on effectively the religious work of the plaintiff.

Upon the law and the facts in this case it is my opinion that the defendants and their heirs have no possible right of reverter or other interest in the real property affected by this action, but that plaintiff has a good title to the same in fee simple absolute.

Findings and judgment may be prepared accordingly.