THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HAVE-MEYER & ELDER, INC., and Others, Defendants.

Supreme Court, Kings County, May 8, 1933.

*John J. Bennett, Jr., Attorney-General [L. Hamilton Rainey, Assistant Attorney-General,* of counsel], for the plaintiff.

*Parsons, Closson & McIlvaine [Ellwood Thomas* of counsel], for the defendants.

LOCKWOOD, J. The State brings an action to set aside five grants of land under water, situated along the East river between North Fourth and North Tenth streets in the Williamsburgh section of Brooklyn. The one grant involved in the third cause of action was made in 1833; the others were made in 1892. The complaint alleges that the grantee failed to comply with the express conditions and reservations made in said grants to within five years actually appropriate and apply the premises described in the grants " to the purpose of commerce by erecting a dock or docks thereon and filling in the same." The defendants make this motion for an order: (1) Dismissing the third cause of action herein on the ground that the same is barred by the Statute of Limitations;

(2) striking out paragraphs 14, 15, 17, 27, 28, 30, 40, 41, 43, 53, 54, 56, 66, 67 and 69 of the complaint herein on the ground that the same are sham and frivolous; (3) dismissing the complaint herein on the ground that the same does not state facts sufficient to constitute a cause of action. It is conceded by the Attorney-General that the land was filled in to the United States government bulkhead line; that piers and bulkheads were erected; and that manufacturing plants and a freight terminal have long been in operation on the property. However, the Attorney-General contends that this use did not comply with the grant; that the docks and piers were used mostly for floats to carry freight cars, were not open to the use of the general public which might wish to bring boats to the wharves; and that the grantees receive rents from the lessee who operated the terminals and that all of this did not promote the commerce of the State of New York. The affidavits of Messrs. James F. Bendernagl, who from 1870 to 1897 was secretary to the late Theodore Havemeyer and who after that period was for some years superintendent of all the Havemeyer property; and of Henry F. Cochrane, now a well-known member of the bar and who from 1881 to 1899 was an employee of one of the sugar refining companies in a plant adjoining the property in question and who since that period has frequently appeared as counsel for various sugar refining companies and industrial plants located in the Williamsburgh section; and of Henry O. Havemeyer, treasurer of the defendant Havemeyer & Elder, Inc., and president of the Brooklyn Eastern District Terminal, show that for over forty years the site in question has been filled in; that bulkheads and docks have been built and were used for sailing vessels, steam vessels, and floats carrying freight cars; that sugar refineries, boiler works, cooperage companies, lumber companies, mills, and coal yards have been in use and occupation on various parts of the property in question. The writer of this opinion was born on North Third street, and in July, 1892, went to work for the Yellow Pine Company in its Williamsburgh lumber yard at the foot of North Second street, and is familiar with the properties now the subject of this action. On this property, during said period, was the great cooperage plant that, year in and year out, made the barrels that carried the sugar from the Williamsburgh refineries to all parts of the world by boat and rail. To these docks, long known as " Palmer's Docks," then the Eastern District Freight Terminal, have come daily, over the years, float after float containing freight cars loaded with products hauled by rail from all parts of North America, and these cars have, in turn, received freight in the form of products manufactured in the

factories of Williamsburgh, many of which were induced to locate there because of the availability of the docks and freight terminals where they could receive their raw products and from which they could ship their output. The present and former òwners of these grants spent great sums of money in improvements thereon, and they and the industries induced to locate in the section because of these facilities have given and still give employment to thousands of people. Over the years tremendous sums of money have been paid in taxes on the land to the city of New York and in franchise taxes to the State of New York. Indeed, the city and borough authorities and the Chamber of Commerce of Brooklyn have represented this great freight terminal as one of the reasons why industries should locate in that section of the borough, and have urged that these terminals be enlarged and be connected up with a marginal railroad in order to anchor industry there and make employment more certain. The grantees were to do three things — fill in the land, erect docks, and apply the property to the purpose of commerce. There is no doubt that, within the time specified, they did fill in the lands and erect docks and piers, and the sole question seems to be as to whether the erection and operation of factories, freight terminal, and the bringing in of thousands of freight cars yearly and allowing boats to use the wharves was promoting the commerce of the State of New York. An examination of the records here shows that some years ago the people of the State of New York brought similar proceedings against the American Sugar Refining Company affecting nearby properties. In *People* v. *American Sugar Refining Co.* (86 Misc. 78) Mr. Justice MANNING held that the complaint was demurrable on the ground that it did not state facts sufficient to constitute a cause of action and, in effect, held that the erection of factory buildings on land similarly granted promoted the commerce of the State of New York. In *People* v. *American Sugar Refining Co.* (98 Misc. 703) Mr. Justice KELBY held that a grantee of land under water for the purpose of promoting commerce may erect private manufacturing plants and is not restricted to the erection of docks to which the public has the right of use upon payment of reasonable fees. In the course of his opinion he said (98 Misc. 707): " The legislature of this state, in the various relevant statutes, has never enacted that the exclusion of manufacturing from such lands was a way of promoting commerce, or that the erection of docks was the aim, the end and the measure of accomplishing that result. * * * In a general and practical sense, commerce does include manufacture, as creative of a very large part of its substance, while docks are not the substance of commerce, but adjuncts,

incidents and conveniences to its exercise." At page 709: "It seems assumed in the argument that a dock is a pier extending into the stream, but the word dock itself does not always, or even usually, import this signification. A dock may be a pier, or it may be a slip between two piers, or, *vice versa*, two piers inclosing a slip; or it may be a bulkhead, or a sea-wall, to filled in lands. These differences, and others are pointed out in Bouvier Law Dict.; 29 Cyc. 341; 40 id. 890; *Fitchburg R. R. Co.* v. *Boston & Maine R. R. Co.*, 3 Cush. 58, 87; *Matter of Parsons*, 191 U. S. 17, 33. How can it be said, in which, if any, of these possible meanings, the word was used in these grants? The grants themselves afford no clue. There is no specification of size, structure, location, material, adaptability, or use of the dock or docks. How, if a specific performance were being sought, could this condition be enforced by decree? There is not even any certainty how many docks are to be built — each one of the eight grants speaks of ' a dock or docks ' to be erected, and this uncertainty is reflected in the complaint. There is no test of local necessity prescribed. If every one of these grants carried the rigid and imperative condition of building a dock or docks, irrespective of need or use for them, the result might be a succession of unused and useless docks stretching along the water front. And where, finally, in these grants is there any direction that these vague, unlimited docks are to be public docks, or docks open to public use? If such was the intention it might have been adequately carried out by express words." To the same effect is *People* v. *American Sugar Refining Co. of New York* (182 App. Div. 212). In *Welton* v. *State of Missouri* (91 U. S. 275, at p. 280; 23 L. Ed. 347) Mr. Justice FIELD wrote a unanimous opinion defining commerce as " a term of the largest import. It comprehends intercourse for the purposes of trade in any and all its forms, including the transportation, purchase, sale, and exchange of commodities between the citizens of our country and the citizens or subjects of other countries, and between the citizens of different States. The power to regulate it embraces all the instruments by which such commerce may be conducted." In *Henderson* v. *Mayor of New York* (92 U. S. 259, at p. 270; 23 L. Ed. 543) the court said: "As was said in *United States* v. *Holliday* (3 Wall. 417, ' commerce with foreign nations means commerce between citizens of the United States and citizens or subjects of foreign governments.' It means trade, and it means intercourse. It means commercial intercourse between nations, and parts of nations, in all its branches." From 2 Words and Phrases (Third Series), at p. 173, commerce is defined as follows: " The term ' commerce ' comprehends more than the mere exchange

of goods. It embraces commercial intercourse in all its branches, including transportation of passengers and property by common carriers, whether carried on by water or by land. (*Ft. Smith & W. R. Co.* v. *Blevins*, 130 P. 525, 529; 35 Okl. 378.) ' Commerce ' is defined as exchange of goods, production or property of every kind, especially exchanges on a large scale as between states or nations. (*People* v. *Epstean*, 102 Misc. 476.)"

I find conclusively from the papers submitted on this motion that the grantees and their successors complied fully with the terms of said grants; that within five years they filled in the land; that they built docks, and that they used the property to promote the commerce of the State of New York. As to the 1833 grant, the third cause of action, the court finds that it is barred by the Statute of Limitations. (See Civ. Prac. Act, § 31, and the decision of Mr. Justice STEINBRINK in *People* v. *Tompkins-Kiel Marble Co.*, 148 Misc. 559.) The court holds that the motion to dismiss the complaint should be granted *in toto*.